Well, I've never been much of a dancer, and I think it was evident as I fumbled my way back to the seats. That's not our fault. No problem. Good morning, Your Honors. May it please the Court, Andrew Rubin for the talent and the original petitioner in this case. And other than questions, I think I'm going to be actually pretty brief. I figure about five or six minutes. I think I just want to point a couple of things out to make them clear, although I think the brief was, as I look back at it after a long period of time, pretty clear. And then I also want to put this Court into the position of the jury. And, of course, the background is always, was the application of Strickland by the California Supreme Court an unreasonable application of Strickland? That's the test, and there's no doubt they used Strickland. The question is, was it unreasonable? And the first thing I want to say is that it's important to understand that in pointing out why an expert was needed, an expert was not needed in this case to talk about what Mr. Castillo's mindset was. The expert wouldn't have been able to say that probably. Maybe would, maybe wouldn't, maybe she would, maybe she wouldn't. We have no idea. The important point was Mr. Castillo gave some pretty detailed testimony. There was one witness who said, gee, he looked kind of okay to me. And I think that the expert would have been able to testify and explain how a witness would have been mistaken about that. And even though there's no PCP expert. I'm sorry, PCP expert, right. I don't see anything that we'd know what an expert would have testified to. Well, the interesting thing about this case. There's no declaration from any expert or from anybody who said if I had been called, I would have been able to say X, Y, or Z. I mean, this is something that looks like it's been dreamt up for the brief. You've never been presented to the district court or trial court. Well, actually, there was a second. There was a habeas. The Supreme Court kicked the habeas. There was an original habeas filed in the Court of Appeal in California. The California Court of Appeal decided and reversed the case. Sorry. Based on the direct appeal and said we don't have to deal with the habeas. California Supreme Court reversed the reversal and sent it back for the habeas. But, yes, there's nothing in the record. And that's one of the reasons I don't want to make too big a point about this. But what we do know is that there's plenty of California case law in which California courts, and it's all cited in the briefs, have recognized what the effect of PCP is on a person. And so given that that's in case law and accepted as fact by case law, I think it's not unreasonable to say that's what an expert would have testified to. That's like saying you could call a fingerprint expert. But, you know, in theory that's true, but you'd have to have some expert to say I examined the fingerprints and they don't match or something. Well, no. What we're really saying is that the equivalent would be saying that a fingerprint expert would be able, if the prints were identifiable, a fingerprint expert would have been able to say that. Not that he would have or wouldn't have. All we're saying is that an expert on PCP in general would have been able to say, here's what the effects that PCP have in general on people. I don't know about the defendant. Pardon me. Do you think that PCP always has the same effect on everybody? Because if so, you could have taken judicial notice of that, right? Absolutely. There was no judicial notice requested. No, there was no judicial notice requested. And then secondly, the PCP, are you intimating that PCP evidence would come in to show that he was unable to form the intent required? No. The PCP evidence would have come in to explain, for example, if someone is taking drugs that make their eyes glassy and a witness had testified this person's eyes were glassy, PCP, assuming it's PCP, PCP expert comes in and says, I have no idea whether he was on PCP. I wasn't there. I didn't test him within six months. PCP would be out of the system. But one of the effects that PCP has is it makes people's eyes, a lot of people's eyes glassy. Now, would it necessarily have made this person's eyes glassy? No. But it is evidence that supports the person's testimony. In the same way as any expert evidence, say expert evidence on gangs comes in. Do we know that the particular gang or the particular person did whatever the gang expert says? No. But what it does is it makes other testimony more believable. And so, again, I don't want to push too hard on this expert business because I think it's not vital, but it's useful for my point. But all I think that the expert really needed to do was to say, here are some effects PCP can have, and they're consistent with the way the person was acting. That's all. And is it a big push in terms of making Mr. Castillo's testimony believable to the jury? No. And perhaps it goes more to the prejudice prong, even, than the ineffective assistance of counsel prong, because the question then becomes, assuming that this proper instruction had been offered and given, would the jury have decided differently? So I think one of the ways to look at it is it would have been useful in a prejudice prong. What I want to talk about with regard to the instructional issue is let's take the jury sitting there and getting these instructions. And the jury is told that specifically voluntary ingestion of PCP can negate intent to kill. That's told to them specifically. In the written instruction, it says that it can also affect mental state, although as the instruction was read, it wasn't read that way. But the jury isn't told that PCP, voluntary PCP ingestion, can have an effect on deliberation and premeditation. The real question is, is a juror, having been told that PCP ingestion, voluntary PCP ingestion, can have an effect on intent to kill? And they're told that specifically. And then they're given a general instruction and never told that premeditation and deliberation is a mental state, and a mental state that can be negated by PCP ingestion. They're never told that. Is it reasonable to say that the jury would have put this together? And the answer is, I don't have a clue. And I think the jury wouldn't. But I want to suggest that where an instruction, or even in just a general discussion, if we have a general discussion, and I propose a point, and I go into it in great detail, and I specifically mention the subject of the point, and then I have a throwaway line that doesn't go into nearly as much detail, aren't I by negative pregnant saying that something else specific isn't included? If I wanted to say to the jury, not only can PCP ingestion affect intent to kill, but it can also negate premeditation and deliberation. In order to make it clear, it seems to me that they both have to be said with equal specificity. And in this case, intent to kill, the jury's told PCP ingestion can negate that. And premeditation and deliberation, they're not told. And they're not told it's a mental state. And they're not told it's a mental state that can be affected. How do you bring that theory in under a DIPA? Isn't this in a DIPA case? I've always wondered why it's not pronounced ed book. Isn't the E before the D? Right. It is, right. Of course it's an ed book case. And I don't mind you asking me a question, since I don't know the answer to that one. Okay. But seriously, we're reviewing a state court proceeding. Right. A habeas denial by the district court, not giving relief after a state court conviction. Does that affect your theory that an additional instruction should have been given? It doesn't. Well, does it affect it? Well, of course it affects the analysis of it. But how do you show it's a federal? What's the federal violation here that's established by Supreme Court law? Okay. Strickland says the person has a right to competent counsel. Federal law and state law both say that a defendant is entitled to a pinpoint instruction under certain circumstances. I'm arguing this is one of those circumstances, and that an attorney who failed to do that is ineffective, especially in a circumstance in which the instruction is not something he had to create. It's a Calgit form. And it's an instruction that was actually given, but the blanks weren't filled in. It seems to me, under, number one, the standard of, you know, the standard of competency, how does a lawyer who tried the entire case on a diminished mental state not do that? And, number two, even if someone wasn't really quick on the ball, here's the ball given to them. Here it is. Here's the silver platter. Here's the instruction. What should be done with it? So it seems to me that even under AEDPA, counsel was ineffective, and in this case, Strickland was incorrectly applied on the and that's not the test. The test is do we have confidence, and I think we don't. Okay. You're not saying that the trial court did not instruct at all on what deliberation and premeditation were. No. No. My argument is that the the voluntary intoxication instruction dealt with specific intent required to commit the crime, but did not say anything about deliberation and premeditation, which were dealt elsewhere in the instructions. All right. They were defined in the instructions, but they were not coordinated with the fact that they were a mental state that could be affected. The California Supreme Court found that the specific intent or mental state would be defined elsewhere in the instructions, and deliberation and premeditation were explained elsewhere in the instructions as a requirement of the specific intent needed to commit the crime involved, which could be palliated by the voluntary ingestion of the intoxicant, right? That's sort of what they said, I guess. Yeah, sort of. Yeah. That's sort of what they said. Would you want to have them say it twice? No, because premeditation is not part of specific intent. It's something above that, something different from and above. The specific intent or mental state required for this crime required deliberation and premeditation. No. First degree murder. No, no. Specific intent goes for either first or second premeditations in addition to. Well, it's a form of specific intent, isn't it? What's that? Premeditation? Yes. It's related to, but it's not a form of it. Okay, I guess we'll ponder that one for a minute. Thank you very much. Thank you. Mr. Daniels? Good morning, Your Honors. Larry Daniels, California Deputy Attorney General for the Warden. With regard to the case law on PCP that counsel discusses, there's nothing in those cases at all that would match up with the facts of this case. Those cases talk about a list of horribles that can happen with PCP, but there's certainly nothing that would support his speculative assertion that a PCP expert in this case would have testified that Petitioner acted solely as a result of PCP amnesia. For example, he mentions that the eyes were glassy. Well, there was no testimony about that in this case, that Petitioner's eyes were glassy. The instructions given were proper, as stated by the California Supreme Court, and we would submit that that's a state law determination in reaching the federal question of ineffective assistance to counsel, and that under ADEPA or ADEPA, this court should defer to that determination. With regard to Petitioner's contention that the oral instructions were incorrect in this case, there was a minor defect in that at the beginning of the instruction, of one of the instructions, the trial court in reading it only said specific intent and didn't say mental state. But then the trial court went on three more times and said specific intent or mental state. In that instruction and later in the next instruction, CALJIC 4.21.1, the trial court again kept repeating that voluntary intoxication impacted specific intent or mental state. One final point I'd like to make is that counsel's argument in his brief that the verdicts were somehow inconsistent, that the fact that the jury found Petitioner not guilty of attempted murder of Cortez while finding him guilty of the murder of Garcia, that that somehow showed that the jury must have disagreed about premeditation. What that actually shows is that the jury disagreed about specific intent, because the attempted murder charge was charged as a premeditated attempted murder charge. So what the jury had to find was two things. Was Petitioner guilty of attempted murder, i.e., did he have specific intent? And if they found that, then was Petitioner guilty of premeditated attempted murder? In this case, the jury found that Petitioner was not even guilty of any attempted murder, it was only guilty of assault. So what that necessarily meant is that they found no specific intent in the attempted murder. They didn't even reach the issue of premeditation. Whereas in the murder charge, we know it's undisputed that specific intent was instructed clearly on as to voluntary intoxication, so they must have rejected voluntary intoxication as to specific intent as to the murder charge. So once you reach that conclusion, it's a very, very implausible argument to make. In fact, it can't really even, I don't think it's even articulable, how the jury in this case could have found that Petitioner specifically intended to murder, that the voluntary intoxication didn't stop that, but somehow it stopped his premeditation to murder Garcia, when Petitioner took all these preparatory acts, as I outlined in my brief. If there are no further questions, the respondent will submit. Thank you, Mr. Danielson. Mr. Rubin will give you a minute in rebuttal. It seems to me that the verdicts can be explained, and they were explained, I think, by the California Supreme Court as saying that the jury believed that the attempted murder was impulsive and that the murder itself was what was thought out. And so how the jury found on the attempted murder, I think, is not as positive as how they would have found on the murder. And the real question is, were they instructed that the voluntary, that the PCP could affect the intentional murder? Was it, you know, was it specific intent? And they reject that. In other words, they reject the PCP diminishing. But they weren't told with regard to premeditation. So we have no idea whether the jury would have said, you know, the PCP would have been affecting him to the point at which he couldn't premeditate. But, yeah, he still intended to kill him. And I think the jury could have found that. But a finding that he affected him to the point where he couldn't premeditate violates PC-25, doesn't it? Does it, you can't talk about diminished capacity to form an intent in California any longer. No. Diminished actuality. He didn't have the specific intent. Right, right. You can't talk about diminished capacity. You can't, I don't want to go over it too far, but you can't say he didn't have the capacity to do this. But you can say he didn't have the, he didn't actually do it. Okay. That's the difference in California. Thank you. And thanks for the extra minute. Thank you. The matter is submitted. 0350-167 and 50223, United States versus Tapia Marquez is submitted on the briefs. 0350-140, United States versus Pineda-Torres. Each side has 20 minutes.
judges: Silverman, Gould, Bea